UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMALL S. BAKER,

                Plaintiff,

v.

JEREMY SEELEY, *et al*.,

                Defendants.

Case No. C22-5584-DGE-SKV

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Jamall Baker is in the custody of the Washington Department of Corrections ("DOC") and is currently confined at the Monroe Correctional Complex ("MCC") - Special Offender Unit ("SOU"). Plaintiff alleges in this action that a number MCC-SOU corrections officers and mental health providers violated his rights under the United States and Washington constitutions when they retaliated against him for writing grievances, filing lawsuits, and speaking out about prison conditions. Dkt. # 1-4. Defendants have filed a motion seeking summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies before filing suit. Dkt. 9. Plaintiff has filed a response in

opposition to Defendants' summary judgment motion (Dkt. 12), and Defendants have filed a reply brief in support of their motion (Dkt. 14). Plaintiff has also filed a motion to supplement his response (Dkt. 13), and a motion seeking leave to file a surreply (Dkt. 17).

The Court, having reviewed Plaintiff's amended complaint, Defendants' motion for summary judgment, and the balance of the record, concludes that Defendants' motion for summary judgment should be granted, and that Plaintiff's amended complaint and this action should be dismissed with prejudice. The Court concludes as well that Plaintiff's motion to supplement his response and his motion for leave to file a surreply should be denied.

## II.  BACKGROUND

Plaintiff initiated this action on April 28, 2022, by filing a civil rights complaint in Thurston County Superior Court. *See* Dkt. 1-3. On August 12, 2022, after Plaintiff filed an amended complaint in the Thurston County action and served it on some of the Defendants named in his pleading, Defendants removed the case to this Court. *See* Dkts. 1, 2, 3. Plaintiff alleged in his amended complaint that between October 2021 and March 2022, Defendants schemed to interfere with his relationship with his friend Rhonda Gibson, which included contacting Ms. Gibson via telephone, email, and social media and telling her lies about Plaintiff. Dkt. 1-4 at 5-7. Plaintiff further alleged that Defendant Jeremy Seeley, a corrections officer at MCC-SOU, provided other inmates with Plaintiff's personal identification number ("PIN") so that those inmates could contact Plaintiff's family and friends. *Id*. at 7-8. Finally, Plaintiff alleged that Britney Richards, a mental health therapist at MCC-SOU, "stalked" him whenever he would speak with Ms. Gibson on the telephone. *Id*. at 8-9.

Plaintiff identified the following twelve Defendants in his amended complaint, all of whom were employed at MCC-SOU at times relevant to this action:  Corrections Officers Jeremy Seeley, McPeter, and Walters; Corrections Lieutenants Christopher Hallgren and Walters; Classification Counselors Hans Kleiman, and Camden Crouse; Mental Health Therapists Britney Richards, St. John, and Trent Eisenbeisz; Mental Health Counselor Kampmann; and Unit Psychologist Mason.  Dkt. 1-4 at 2-5.  Plaintiff requested declaratory relief and damages.  *Id*. at 13.

### III.    DISCUSSION

    *1.    Exhaustion*

Defendants argue in their motion for summary judgment that Plaintiff was required to exhaust his administrative remedies before filing suit but failed to do so, and that the deadline for exhausting his remedies has now passed.  Dkt. 9.  Defendants therefore ask that Plaintiff's amended complaint be dismissed with prejudice.  *See id*.

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Section 1997e(a) requires *complete* exhaustion through any available process.  *See Porter v. Nussle* 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739 (2001).  Section 1997e(a) also requires *proper* exhaustion.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "Proper" exhaustion means full compliance by a prisoner with all procedural requirements of an institution's grievance process.  *See id*. at 93-95.

Failure to exhaust administrative remedies is an affirmative defense which a defendant must plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). A defendant must produce evidence demonstrating that there was an available administrative remedy and that the prisoner did not exhaust that remedy. *Id*. at 1172. The burden then shifts to the prisoner who must show that there is something in his case that made the existing remedies effectively unavailable to him. *Id*. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment. *Id*. at 1166.

The Ninth Circuit has recognized that acts by prison officials that prevent the exhaustion of administrative remedies may make administrative remedies effectively unavailable to a prisoner. *See Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010). Similarly, in *Ross v. Blake*, 578 U.S. 632 (2016), the United States Supreme Court held that § 1997e(a) requires an inmate to exhaust only those grievance procedures "that are capable of use to obtain some relief for the action complained of." *Id*. at 642 (citation and internal quotation marks omitted). In *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015), the Ninth Circuit recognized that "the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies."

Defendants have produced evidence demonstrating that the DOC has an established Offender Resolution Program (formerly known as the Inmate Grievance Program) through which prisoners may file complaints relating to various aspects of their incarceration. *See* Dkt. 10 at ¶¶ 2-3, 5. Among the issues an inmate may challenge through the program are: (1) DOC policies, rules, and procedures; (2) the application or lack of application of policies, rules, and

procedures; (3) the actions of staff or volunteers; (4) the actions of other inmates; (5) retaliation against an inmate for good faith participation in the resolution program; (6) personal safety; and (7) physical plant conditions. *See id*. at ¶ 5, Attach. 1 at 6.

Inmates have twenty working days from the date of an incident to file a resolution request, and the resolution procedure has four levels of review. Dkt. 10 at ¶¶ 8, 9. The initial level, Level 0, is the informal resolution stage. *Id*. at ¶ 9. At this level, the Resolution Specialist at the facility where the inmate is housed receives a written complaint from an inmate which identifies an issue with respect to which the inmate wishes to pursue a resolution. *Id*. The Resolution Specialist either pursues informal resolution, returns the complaint to the prisoner for rewriting or for additional information, rejects the complaint if the issue is not eligible for resolution through the Offender Resolution Program, or accepts the complaint and processes it as a concern that warrants Level I review. *See id*.

At the first step of the formal resolution process, Level I, the Resolution Specialist either investigates the inmate's concern or assigns the complaint to an employee or contract staff member to investigate. Dkt. 10 at ¶ 9. Once the investigation and review are complete, the Resolution Specialist issues a formal response. *Id*. An inmate who is dissatisfied with the response received from the Resolution Specialist may appeal the decision to the next level but must do so within five days. *Id*. The appeal is assigned to an employee or contract staff member to investigate, and the Superintendent of the facility or Health Services Administrator issues a formal response. *Id*. This is known as Level II. *Id*.

An inmate who is dissatisfied with the Level II response may appeal that decision to DOC headquarters but, again, must do so within five days. Dkt. 10 at ¶ 9. This is known as

REPORT AND RECOMMENDATION
PAGE - 5

Level III. *Id*. At this level, the Resolution Program Manager at DOC Headquarters, or his/her designee, assigns the complaint to an employee or contract staff for investigation. *Id*. Once the investigation is complete, a formal response is issued by the Deputy Secretary of the DOC or his/her designee. *Id*. This is the final level of review under the Offender Resolution Program. *See id*.

According to DOC records submitted by Defendants in support of their summary judgment motion, Plaintiff has filed over 250 resolution requests since the beginning of 2012, including more than 30 resolution requests filed between October 2021, when the events giving rise to this action allegedly began, and April 28, 2022, when Plaintiff filed this action in Thurston County Superior Court. *See* Dkt. 10 at ¶ 11; Dkt. 15, Attach. A. DOC Resolution Program Manager Carol Smith reviewed resolution requests filed by Plaintiff during the relevant time period and found that while three of the resolution requests were appealed all the way through Level III of the resolution process, none of those three requests pertained to the allegations made by Plaintiff in this lawsuit. Dkt. 10 at ¶ 11. Plaintiff does not argue to the contrary. Plaintiff instead argues that the remedy afforded by the Offender Resolution Program was unavailable to him because Defendant Seeley, on two occasions, threatened him with death if he continued to file grievances and lawsuits against staff members. *See* Dkt. 12.

Specifically, Plaintiff contends that on or about August 6, 2021, Defendant Seeley told Plaintiff, "Baker you better stop bitching, or what happen [sic] to Jalothot will happen to you, and you're correct his death was not a coffee overdose."[1] *See* Dkt. 12-1 at ¶ 2. Plaintiff claims

---

[1] In his affidavit in support of his response to Defendants' summary judgment motion, Plaintiff states that fellow MCC-SOU inmate Arnell Jalothot was killed by MCC-SOU staff in November 2019. Dkt. 12-1 at ¶ 3 According to Plaintiff, inmate Jalothot's death was "passed off as being a coffee overdose," but he believes inmate Jalothot "was killed by being given too much of the wrong anti-psychotic medication." *Id*.

REPORT AND RECOMMENDATION
PAGE - 6

this statement was made in response to an emergency grievance he had filed earlier that morning in which he complained about Defendant Seeley harassing him. *See id*. Plaintiff contends that Defendant Seeley threatened him again on or about January 19, 2022, when Defendant Seeley said to Plaintiff, "Baker, you know if you continue to write grievances and sue us, you're going to end up like Jalothot." *See id*. at ¶ 4. Plaintiff claims that he was afraid if he named Defendant Seeley, or any of the other Defendants, in a resolution request, he "would be assassinated by use of anti-psychotic medication or worse." *Id*. at ¶ 5. Plaintiff also claims that while he was living on "E-Unit," where most of the Defendants were assigned to work, he was afraid to write grievances against any of them because he believed Defendant Seeley would make good on his threats. *Id*. at ¶ 6.

Defendant Seeley, in a declaration submitted in support of Defendants' reply brief, denies ever having threatened Plaintiff's life, denies knowing the cause of inmate Jalothot's death, and denies ever having discussed inmate Jalothot's death with Plaintif f. Dkt. 18 at ¶ 4.

As Defendants correctly note in their reply brief, despite the alleged threats made to Plaintiff by Defendant Seeley, and his purported fear of filing grievances, Plaintiff filed many grievances during the relevant time period. Dkt. 14 at 3. Of particular note is a grievance specifically challenging Defendant Seeley's alleged harassment that Plaintiff filed on August 6, 2021. Dkt. 16, Attach. A at 1. After initially filing the grievance, Plaintiff refused to be interviewed by the assigned investigator and ultimately asked that the complaint be withdrawn for reasons unrelated to Defendant Seeley. *See id*., Attach A at 2. The resolution request was subsequently withdrawn based upon Plaintiff's request and also based upon Plaintiff's failure to participate in the resolution process. *See id*., Attach A at 2, 4.

REPORT AND RECOMMENDATION
PAGE - 7

On October 1, 2021, Plaintiff submitted an appeal in which he asked that his resolution request be reopened "so that my allegations against [Officer Seeley] can be looked into." Dkt. 16, Attach. A at 4. The resolution request was subsequently re-opened, and Plaintiff submitted his formal appeal to Level II on October 12, 2021. Dkt. 16, Attach. A at 5-6. Plaintiff thereafter participated in an interview for his Level II appeal on November 12, 2021, and submitted an appeal to Level III on December 8, 2021. *See id.*, Attach. A at 5-10. At each level of this process, Plaintiff challenged the conduct of Defendant Seeley, and in his Level III appeal Plaintiff even accused Defendant Seeley of being "imbued with a criminal mentality." *See id.*, Attach. A at 9-10. Notably, however, at no point during the resolution process did Plaintiff make any assertion that Defendant Seeley had threatened him with death, even though Plaintiff claims it was the filing of this specific grievance that prompted Defendant Seeley to issue the first threat. *See* Dkt. 12-1 at ¶ 2; Dkt. 16, Attach. A at 1.

This Court also observes that at the time Defendant Seeley purportedly made his threats against Plaintiff, Plaintiff had a lawsuit pending in this Court against Defendant Seeley and others. *See Baker v. Hopkins*, C21-361-MJP-JRC.[2] In a second amended complaint, signed by Plaintiff on September 1, 2021, *i.e.*, after Defendant Seeley purportedly made his initial threat, Plaintiff alleged that Defendant Seeley and others had begun a campaign of harassment against him because of his exercise of his First Amendment rights to petition for redress of grievances. *Id.*, Dkt. 42 at 16-18. Again, notably absent from Plaintiff's pleading was any contention that Defendant Seeley had made death threats against him as a part of the harassing behavior Plaintiff described.

---

[2] A court may take judicial notice of its own records in other cases. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

On March 9, 2022, Plaintiff filed another civil rights action in this Court, this one specifically naming only Jeremy Seeley as a Defendant and alleging again that Defendant Seeley had engaged in a campaign of harassment against him. *See Baker v. Seeley*, C22-285-JCC-TLF, Dkt. 1-1. Despite referencing in his complaint allegedly improper conduct undertaken by Defendant Seeley on August 20, 2021, two weeks after the first purported threat, Plaintiff made no reference whatsoever to any death threat from Defendant Seeley related to Plaintiff's pursuance of administrative remedies or litigation. *See id*. at 3-4. On April 7, 2022, after being advised by the Clerk that his *in forma pauperis* application was deficient because he had failed to provide a prison trust account statement, Plaintiff moved to dismiss the case. *Id*., Dkts. 2, 4. In his notice of voluntary dismissal, Plaintiff explained that he would "rather spend [his] time working on [his] release." *Id*., Dkt. 4 at 4. He indicated as well that "[i]f there is a need to file later, I will." *Id*.

Three weeks later, Plaintiff filed the instant action in the Thurston County Superior Court. Once again, despite alleging a campaign of harassment on the part of Defendant Seeley and others, Plaintiff makes no reference whatsoever to the alleged threats in either the original or amended complaints filed in this action. *See* Dkts. 1-3, 1-4. The first reference to any such threats appears in Plaintiff's response to Defendants' summary judgment motion. *See* Dkts. 12, 12-1.

A review of the records provided by Defendants in support of their summary judgment motion, and of the records on file with this Court in other actions initiated by Plaintiff, suggests only two reasonable conclusions regarding Defendant Seeley's purported threats: (1) the threats were never made, as Defendant Seeley maintains; or (2) Plaintiff did not believe the threats as

REPORT AND RECOMMENDATION
PAGE - 9

evidenced by his continued efforts to litigate claims of harassment against Defendant Seeley after the purported threats were made. Either way, Plaintiff has not demonstrated that the resolution process was unavailable to him for purposes of challenging the events which give rise to this civil rights action. The Court therefore concludes that Defendants are entitled to summary judgment in this matter based upon Plaintiff's failure to exhaust his administrative remedies. And, as it is clear that the time for pursing his administrative remedies with respect to the claims asserted herein has passed, Plaintiff's amended complaint should be dismissed with prejudice.

### 2.   *Plaintiff's Pending Motions*

#### a.   Motion to Supplement Response

On September 8, 2022, a week after Plaintiff submitted his response to Defendants' summary judgment motion and a supporting affidavit, Plaintiff filed a motion to supplement his response with a declaration which he asserts will "bring[] clarity" to his original affidavit. Dkt. 13 at 1. Plaintiff asks that his newly submitted declaration be considered together with his original affidavit. *See id*. at 2. It is not apparent how Plaintiff's declaration is intended to clarify his earlier affidavit. The primary focus of the declaration appears to be on the death of inmate Arnell Jalothot and, more specifically, on inmate Jalothot's cause of death. *See id*. at 3-4. Plaintiff states there was a "consensus" among inmates housed on E-Unit of the SOU that inmate Jalothot was killed by DOC staff members and did not die as a result of a "coffee overdose." Plaintiff goes on to assert that Defendant Seeley was "aware" of what Plaintiff "believed" about the death of inmate Jalothot, and that Defendant Seeley "knew by making these threats, based on my feelings regarding Jalothot's death," that he could intimidate Plaintiff into not filing a grievance pertaining to the events giving rise to this action. *See* Dkt. 13 at 3-4.

REPORT AND RECOMMENDATION
PAGE - 10

As Plaintiff cannot speak to what Defendant Seeley may or may not have known or been aware of, and as such assertions are the only substantive additions to the contents of Plaintiff's original affidavit, it would serve no purpose to grant Plaintiff leave to supplement his original response with the proffered declaration. Plaintiff's motion to supplement should therefore be denied.

### b. Motion for Leave to File a Surreply

Plaintiff also moves for leave to file a supplemental response to Defendants' reply filed in support of their motion for summary judgment. Dkt. 17. Plaintiff is, in effect, requesting leave to file a surreply. Pursuant to Local Civil Rule ("LCR") 7(g), a surreply is limited to addressing a request to strike materials contained in or attached to a reply brief. Plaintiff's motion does contain a request to strike, but it also contains additional extraneous argument. With respect to the request to strike, Plaintiff objects to the following statement of counsel contained in Defendants' reply brief: "Officer Seeley denies threatening Baker for any reason and Baker's own conduct contradicts his assertion that he feared retribution from Seeley." Dkt. 17 at 2. Plaintiff argues that this denial should be stricken because it was not supported by an affidavit or declaration. *See id*. In fact, on the same date Plaintiff submitted his motion for leave to file a surreply, Defendant Seeley submitted a declaration which supports the denial proffered by counsel. *See* Dkts. 17, 18. Though it would have been preferable for Defendants to have submitted Defendant Seeley's declaration in conjunction with their reply brief, the declaration was otherwise timely as it was submitted prior to the deadline for filing a reply.

The remainder of Plaintiff's motion merely contains additional arguments in response to Defendants' reply (*see* Dkt. 18 at 2-4), which is not permitted under LCR 7(g)(2). Though not

REPORT AND RECOMMENDATION
PAGE - 11

entirely clear, Plaintiff appears to suggest in his motion that the Court should consider his otherwise impermissible arguments because of his "limited understanding of the law." *See* Dkt. 17 at 1. Plaintiff maintains that he "mistakenly omitted a thorough explanation of the facts" from his response to Defendants' summary judgment motion, and that had he "been trained in the law he would not have made this mistake." *Id*. This assertion by Plaintiff is undermined by representations he made to the Court in *Baker v. Hopkins*, C21-361-MJP-JRC. In his original complaint in that action, Plaintiff asserted that he "has received a certificate in Paralegal Studies and received two additional advanced certificates, one in Civil Litigation and another in Criminal Law[.]" *Id*., Dkt. 4 at 1. While it is clear Plaintiff is not a trained attorney, there is reason to question his claim that he has a limited understanding of the law. In any event, LCR 7(g)(2) is clear that extraneous argument presented in a surreply will not be considered, regardless of the reason for which it is offered. For the reasons set forth above, Plaintiff's motion for leave to file a surreply, including his request to strike, should be denied.

### IV.  CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment (Dkt. 9) be granted and that Plaintiff's amended complaint (Dkt. 1-4) and this action be dismissed with prejudice based upon Plaintiff's failure to exhaust his administrative remedies. The Court further recommends that Plaintiff's motion to supplement his response (Dkt. 13), and his motion for leave to file a surreply (Dkt. 17), be denied. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.

REPORT AND RECOMMENDATION
PAGE - 12

Failure to file objections within the specified time may affect the right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 18, 2022**.

DATED this 25th day of October, 2022.

*S. Kate Vaughan* (signature)

S. KATE VAUGHAN
United States Magistrate Judge